Quinn, Respondent, vs. Hartmann, Appellant.

*January 12—February 7, 1933.*

For the appellant there was a brief by *Bendinger & Hayes* of Milwaukee, and oral argument by *Gerald P. Hayes*.

*Melroy R. Graf* of Milwaukee, for the respondent.

NELSON, J. The defendant contends (1) that the evidence wholly fails to prove any actionable negligence on his part at the time of or immediately prior to the collision; (2) that the plaintiff was negligent as a matter of law and that such negligence proximately contributed to produce his injuries; (3) that the damages are excessive; (4) that the trial court erred to the prejudice of the defendant in charging the jury; and (5) that the form of the verdict was erroneous.

In the view we take of this controversy only the first contention, which incidentally involves the form of and the ultimate fact inquired about in question 3, need be considered. Question 3 is as follows:

"Did the defendant fail to have or keep his automobile under such control as to enable him, in the exercise of ordinary care, to stop in time to avoid the collision?"

The plaintiff, while walking in a southerly direction across Lisbon avenue, was struck by defendant's car and injured. Lisbon avenue runs east and west and is forty-four feet wide from curb to curb. Two lines of street-car tracks occupy the center of the highway. The southerly street-car tracks carry the east-bound street-car traffic. The south rail of the east-bound street-car tracks is fourteen feet seven and one-half inches distant from the south curb line. The collision occurred in the south lane of the highway which carries east-bound automobile traffic, and on the right of way of the Chicago, Milwaukee, St. Paul & Pacific Railroad, which is one hundred feet wide and crosses Lisbon avenue practically at right angles. The westerly sixty feet of the railroad right of way had been excavated for track-depression purposes and was, at the time of the accident, covered by a temporary wooden bridge. The easterly forty feet of said right of way carried three temporary railroad tracks. The distance between the most easterly rail of the railroad tracks and the end of the right of way was about six feet. For several days prior to the date of the accident the plaintiff had been engaged with three or four other railroad employees in carrying cinders from a pile located on the railroad right of way and to the south of Lisbon avenue, to various places on Lisbon avenue. The purpose of the work was to fill up holes and depressions which developed in Lisbon avenue on the railroad right of way. Shortly before the accident the plaintiff had carried a shovelful of cinders from the cinder pile to a hole located about in the middle of the north lane for west-bound automobile traffic. He deposited the cinders there and then started back across Lisbon avenue with the shovel in his hand. At the time mentioned both the north and south lanes of Lisbon avenue were open to public travel and heavy continuous automobile traffic existed thereon. The time of the accident was about 8:30 in the forenoon. At the time the plaintiff started back to the south an east-bound

street car had stopped at the westerly side of the railroad tracks. The plaintiff observed the street car start up and proceed in an easterly direction toward him. Notwithstanding the conceded fact that the street car was in motion, the plaintiff started to cross in front of it while it was a short distance away, estimated by the plaintiff to be about sixteen feet. Passing the east-bound car tracks the plaintiff proceeded to walk rapidly into the south lane of the avenue. He was struck by the right-hand side of defendant's bumper and by his right fender.

It appeared without dispute that just prior to the accident the defendant was proceeding in an easterly direction along the south lane of Lisbon avenue. He came up to the street car which was stopped at the railroad tracks. He stopped his automobile along the rear end of the street car and waited until the latter started up. He then started his automobile and ran along beside the street car at a speed somewhat greater than that of the street car. When the front of the automobile was about even with the front of the street car he observed the plaintiff moving to the south across his lane of travel. The defendant applied his brakes, quickly turned his automobile to the left in an attempt to avoid hitting the plaintiff, and stopped it within two and one-half or three feet after hitting the plaintiff. The plaintiff was knocked down and lay in front of defendant's automobile.

We have carefully examined the entire record for the purpose of trying to find any evidence which sustains the findings of the jury that at the time of the collision the defendant failed to exercise ordinary care with respect to the speed at which he was operating his automobile or in respect to his failure to exercise ordinary care in the control of it, with the result that we have been unable to find any testimony reasonably permitting the jury to infer that the defendant was negligent either with respect to the speed or the control of his automobile. It is undisputed that as the

defendant came up to the stopped street car he waited until the street car started up. He then started his automobile and proceeded at a rate of speed which permitted him to gain on the street car. Both the street car and the defendant's automobile were crossing the railroad tracks. The physical facts are such that the defendant could not have seen the approach of the plaintiff until he was very near to the front end of the street car. The jury found that the defendant maintained a proper and sufficient lookout. The distance between the plaintiff and the defendant when the defendant, sitting on the left side of the front seat, could observe the plaintiff, could not have been more than twelve or fourteen feet. The distance between the front end of defendant's automobile and the plaintiff was obviously a lesser distance. Upon observing the plaintiff crossing in front of him the defendant applied his brakes, turned his automobile to the left, and stopped it within a distance of two and one-half to three feet after striking the plaintiff. The street car stopped three or four feet back of the automobile. All of this testimony impels the conclusion that the plaintiff wholly failed to adduce evidence which would permit of an inference that the defendant's rate of speed was negligent or that the control of his automobile was negligent. The defendant testified that when he first observed the plaintiff his automobile was going at a speed of not to exceed twelve or fifteen miles an hour. The fact that he stopped it within two and one-half to three feet after striking the plaintiff makes it impossible to predicate defendant's negligence on speed. *Feyrer v. Durbrow,* 172 Wis. 71, 178 N. W. 306. The fact that after the defendant observed the plaintiff he applied his brakes, turned his automobile to the left in an attempt to avoid hitting the plaintiff, and stopped it within a very few feet, shows expert control rather than negligent control.

Since the place of the accident was not a street intersection and since the jury found that the defendant did not fail to

maintain a proper lookout, it may not be held that the defendant, in the exercise of ordinary care, had any reason to anticipate that a person would rapidly cross ahead of and close to a moving street car and continue across defendant's lane of travel which was on a busy street bearing heavy downtown automobile traffic.

Question 3 hereinbefore recited was improperly framed. A proper question would have been:

"At and just prior to the collision between the plaintiff and the defendant, did the defendant fail to exercise ordinary care (such care as the great mass of mankind ordinarily exercises when acting under the same or similar circumstances) with respect to the control of his automobile?"

The question as submitted places altogether too heavy a burden upon the defendant. Under the undisputed evidence the defendant did not stop in time to avoid the collision, so the jury, under the question as submitted, was necessarily compelled to find that the defendant's control of his automobile was such that, in the exercise of ordinary care, he could not stop in time to avoid the collision. The proper inquiry, under the circumstances of this case, was whether the defendant exercised ordinary care in the control of his automobile, and not whether he exercised such control as to enable him, in the exercise of ordinary care, to stop in time to avoid the collision. However, in this case we treat the submission and question 3 of the verdict as though it had been in proper form and answered "yes" by the jury.

Since, in our opinion, the plaintiff failed to prove any negligence on the part of the defendant which proximately caused his injuries, we do not think it would serve any useful purpose to determine whether the plaintiff, under the circumstances, was guilty of contributory negligence as a matter of law, or to discuss the other errors assigned.

*By the Court.*—Judgment reversed, with directions to dismiss the plaintiff's complaint.