DOEPKE, Respondent, vs. REIMER and another, Appellants.

*December 5, 1934—January 8, 1935.*

50

For the appellants there was a brief by *Coleman & Barry* of Milwaukee, and oral argument by *John S. Barry.*

For the respondent there was a brief by *Sydney Charney* and *Charles Shane,* attorneys, and *Joseph A. Padway* of counsel, all of Milwaukee, and oral argument by *Mr. Padway.*

NELSON, J. At the time of the accident plaintiff was about sixty-eight years of age. While she was crossing Greenfield avenue, an east and west street, in the city of Milwaukee, from the south to the north, at about 5:15 o'clock in the afternoon of September 19, 1931, she was struck by an automobile driven by defendant, Harold Reimer, and severely injured. Just prior to the accident, the plaintiff came out of a store located on the south side of Greenfield avenue, the entrance to which was about forty or fifty feet east of the east line of South Twenty-Seventh street, a north and south intersecting street, intending to visit a bakery located on the other side of the avenue. The plaintiff proceeded a few steps to her right, to the edge of the

sidewalk, where she paused momentarily, and, upon looking to her left, observed that a traffic light, located at the southwest corner of the intersection of South Twenty-Seventh street with Greenfield avenue, which controlled the east and west traffic along Greenfield avenue, showed red, and that certain automobiles proceeding in an easterly direction were stopped in evident obedience to that light. There is a slight break to the south in Greenfield avenue, commencing at the west line of South Twenty-Seventh street, so that the plaintiff's view of the traffic light and of the stopped automobiles was unobstructed. There was evidence which, if believed by the jury, permitted the inference that the plaintiff, after making the observation mentioned, calculated that she might safely cross the avenue there although the place of crossing was not at the crosswalk. After making the observation mentioned, she stepped into the street between two automobiles that were parked there and proceeded to cross the street at an ordinary gait without looking again to her left for automobiles approaching from that direction. When she reached a point about nineteen and one-half feet from the sidewalk she observed the defendant's car bearing down upon her. She apparently became very panicky and "just froze there." She observed that the defendant's head was turned to his right and that he was looking toward the sidewalk. The defendant admitted that just prior to and at the time of the accident he was looking toward the sidewalk at some one whom he thought he knew and who was standing at the southeast corner of the intersection. He testified that he did not see the plaintiff before striking her. When he felt the impact of the collision he stopped his car within a comparatively short distance.

The jury found that the defendant was negligent both as to lookout and control of his automobile; that in each of those respects the defendant's negligence was a cause of the collision; that the plaintiff was not negligent in respect to

keeping a lookout, but was negligent (answered by the court) in attempting to cross the avenue at a place east of the east crosswalk of South Twenty-Seventh street; and that such negligence was a cause of the collision. The jury further found that twenty-five per cent of the negligence contributing to the collision was attributable to the plaintiff and assessed the damages sustained by her. The plaintiff moved for judgment on the verdict. The defendant moved for judgment notwithstanding the verdict, to change certain of the answers and in the alternative for a new trial. The court granted plaintiff's motion and denied all of the motions of the defendant. The defendant assigns as error the denial of its motions.

The defendant first contends that no evidence was adduced which supports the finding of the jury that he was negligent either in failing to maintain a proper lookout or to control his automobile just prior to and at the time of the collision. It is our opinion that this contention is without merit. It is clear that the jury was permitted to find that the defendant was not maintaining a proper lookout. The plaintiff testified that she was struck by the right side of the car when she was at a point about a foot and a half from the south rail of the street-car tracks and about nineteen and one-half feet from the sidewalk. She also testified that she walked from the sidewalk at an ordinary gait; that she first observed defendant's automobile bearing down upon her when it was twenty to thirty feet away. The defendant testified that just prior to the accident his automobile was being driven at not to exceed about eighteen miles per hour. Calculating that the plaintiff was walking at a rate of about three miles per hour, and assuming that her testimony was true that she had reached a point nineteen and one-half feet from the edge of the sidewalk when the defendant was twenty to thirty feet away, the jury might well have concluded that for several

seconds at least she was in the open street where she ought to have been seen by the defendant. He claims not to have seen her. In our view, the finding of the jury as to lookout is amply supported.

The defendant argues that, since he did not observe the plaintiff until after he had felt the impact of the collision and since he stopped his automobile within a comparatively short distance, no finding of negligence in respect to control was permissible. The jury may well have concluded that since the defendant was not maintaining a proper lookout while proceeding along a busy city street at about eighteen miles per hour, he did not have his automobile under proper control, although that speed, if accompanied by a proper lookout, would not have been considered negligent. It is our opinion, under the circumstances, that the court did not err in refusing to change the answers.

The defendant next contends that the plaintiff was negligent, as a matter of law, in failing, after leaving the sidewalk, to look again for approaching traffic from the west before entering upon the zone of danger. In *Salsich v. Bunn,* 205 Wis. 524, 238 N. W. 394, it was said that a pedestrian, before crossing a busy city street, should, in the exercise of ordinary care, be required, upon leaving the zone of safety at the sidewalk or curb, to make observations as to approaching traffic from his left. To the same general effect is *Mertens v. Lake Shore Y. C. & T. Co.* 195 Wis. 646, 218 N. W. 85. However, in this action it appears that the plaintiff did make an observation just before entering the street, and did observe that the traffic light was red and that certain cars were stopped in obedience to it. There was nothing to obstruct her view of the traffic light and the automobiles stopped in obedience to it. On account of the break in the street, she had a better view than she would have had had the avenue been straight. It is our opinion that the plain-

tiff's negligence, in respect to looking for traffic approaching from the left, after leaving the sidewalk, was for the jury.

The defendant next contends that the plaintiff's negligence, as a matter of law, was equal to or greater than that of the defendant. The verdict found that the defendant was negligent in respect to keeping a lookout and in respect to his control of his automobile; and that the plaintiff was negligent only in respect to crossing the avenue at the place east of the crosswalk. Considering that the jury was justified in believing that the defendant, while driving his automobile along a busy city street, failed, for at least several seconds, to maintain a proper lookout, and that the plaintiff was negligent only in crossing the avenue at a place other than the crosswalk, we cannot say, as a matter of law, that her negligence was equal to or greater than that of the defendant. In comparing the negligence of the defendant with that of the plaintiff, the jury might well have concluded that if the defendant had maintained a proper lookout, the accident would never have occurred, since the defendant was not driving at an excessive rate of speed and his brakes were in good condition.

The defendants next contend that they were prejudiced by certain questions asked one of their witnesses by counsel for the plaintiff. The questions complained of obviously called attention to the fact that the defendant was insured. One of the defendants' witnesses, who was not a resident of Wisconsin, was asked on cross-examination:

"Q. You were asked to come down by Mr. Reimer's lawyers, by the adjusters for the insurance company, weren't you?

"Q. But you didn't come down on a visit this time? You came down because *they wanted you* to testify in this case?

"Q. Your expenses while down here are being paid by the company?"

While such questions would probably have been held to be prejudicial prior to the enactment of ch. 375, Laws of 1931

(sec. 260.11 (1), Stats.), *Pawlowski v. Eskofski,* 209 Wis. 189, 244 N. W. 611, we now have a different situation with which to deal since the enactment of that law which specifically provides that any insurer of motor vehicles having an interest in the outcome of the controversy adverse to the plaintiff, etc., is a proper party defendant in any action brought by the plaintiff on account of any claim against the insured. In view of the fact that the insurer, Commerce Casualty Company, was joined as a defendant in this action, and that the jury evidently knew that it was so joined and interested in the controversy, we think the questions were not prejudicial. No contention is made that the damages found were excessive. This is significant in considering the asserted error. It is not to be understood, however, that because an insurer is made a party defendant, witnesses testifying on behalf of the insured defendant may be asked questions containing invidious insinuations against his insurer, or that the plaintiff's counsel in such a situation may consider himself licensed to ask questions solely for the purpose of playing up to the jury and unduly emphasizing the fact that the defendant is insured. Counsel should refrain from asking questions which, under certain circumstances, may obviously result in a perverse or unjust verdict.

We have examined the record for the purpose of determining whether the questions were asked for the purpose of prejudicing the jury, or for the purpose of ascertaining what the interest of the witness was in the litigation and whether her testimony was biased. In view of the apparent fact that the witness had not been as frank and candid as one would expect a disinterested witness to be, and that the plaintiff's counsel had the right to show what interest, if any, the witness had in the litigation, we think the defendants, under all of the circumstances, may not justly complain of the questions asked.

*By the Court.*—Judgment affirmed.