DOYEN et al., Appellants, v. LAMB, Respondent

(49 N. W.2d 382)

(File No. 9175. Original opinion filed October 2, 1951)

**Harry Eggen,** DeSmet, **M. T. Woods,** Sioux Falls, for Plaintiff and Appellant.

**G. F. Sherwood, S. D. Sherwood,** Clark, **Austin & Lovre,** and **Irving A. Hinderaker,** all of Watertown, for Defendant and Respondent.

ROBERTS, J. This action was brought by M. H. Doyen, as guardian on behalf of his minor son David, to recover for injuries sustained by the son when he came into contact with an automobile being driven by the defendant. The jury returned a verdict for the plaintiff. The court granted defendant's motion for judgment notwithstanding the verdict on the ground that plaintiff failed to prove actionable negligence. Plaintiff appeals.

The accident occurred shortly after four o'clock in the afternoon of December 18, 1948, when David Doyen, then two months under six years of age, was crossing the main business street of Willow Lake, and the right front of defendant's automobile struck him causing serious injuries. The complaint sets forth that the injured boy was at the time of the accident "an invitee and guest of the City of Willow Lake, Clark County, South Dakota, attending what was known as a Santa Claus Christmas party, where children of the approximate age of said David Doyen and other children of tender age, were invited and induced to attend" and the cause of action is based upon the claim that defendant knowing of the presence of numerous children attending the Christmas party failed to exercise such care under the circumstances as was necessary to avoid striking the minor plaintiff.

The street in question runs north and south. It was estimated that there were at least two hundred children within the business block attending the Christmas party. The Rite Spot cafe is located on the east side of the street referred to and in front of the cafe there is a crosswalk to the opposite side of the street. Automobiles were parked diagonally at the time of the accident on each side of the crosswalk. The father entering the cafe left the boy standing at the edge of the curb. The defendant was driving a Chevrolet sedan in a northerly direction on the said street and according to his testimony the boy darted out from between two cars parked south of the crosswalk and ran against the right front fender of defendant's car. Defendant claims that just before the accident he had stopped his car and as he started forward plaintiff emerged from between the parked cars. He testified: "There were some children on the street ahead of me and I brought my car to a dead stop and sat there and waited for the children to move off and then I started ahead. I don't figure I went more than about the length of my car after I started. * * * I stopped there because I saw two boys run across the street right in front of me and then I see this little boy's cap emerging from the rear of the second or third parked car at the right just over the cowl of my car. I immediately stepped on my

brake and the car came to an instant stop. The boy struck the car. I think he struck it simultaneously about the time I put the brake on."

Frank Ohlsen testified that seated in his car on the west side of the street about 75 feet north of the crosswalk he observed defendant's car approaching from the south; that "it wasn't going so fast * * * was going at least between ten and fifteen miles an hour"; that the accident occurred on the east side of the street and "was at least between the first and second cars south of the crosswalk"; that the right front wheel of defendant's car passed over the boy; and that he saw the boy come out from under defendant's car. No other witness saw the boy at the moment of impact. The witnesses agree that the boy was picked up at a point to the right of the front fender of defendant's car and back of the first or second car parked south of the crosswalk. The witness Grace Lunde testified that the injured boy ran between parked cars into the street. Elmer Seim, grandfather of the injured boy, testified that when defendant stopped his car "the hind wheel slid in pure gravel twenty inches to two feet". The testimony of the boy is to the effect that he was walking to the opposite side of the street on the crosswalk when he was struck, but walking or running it would appear from the testimony of other witnesses as to the place where he was picked up that he emerged from between parked cars.

█ █ It is the duty of the operator of a motor vehicle to exercise reasonable or ordinary care which is defined as the degree of care and caution which an ordinarily prudent or reasonable person exercises under the same or similar circumstances. Granflaten v. Rohde, 66 S. D. 335, 283 N.W. 153. What is reasonable or ordinary care varies depending upon the circumstances of each case. A higher degree of care is required where children are involved or in case of adults where age or physical infirmity is present. As stated in 2 Blashfield Cyclopedia of Automobile Law and Practice, § 1497, "A motorist, in approaching children on the street, must consider their tenderness of age and the probability of their making sudden and erratic movements peculiar to such age as factors calling for greater caution than would

be necessary on the discovery of adults in the same situation. He is not justified in assuming that a child will exercise the same degree of care for his safety as an adult would under the circumstances, nor is he justified in presuming that a child near highway will remain in place of safety. This high degree of care required of motorists is based on the well-known fact that children of tender age act upon intuition and impulse and are apt to do most unexpected things, particularly where there are large numbers of children present in or near the street and there is probability that they are in a state of excitement." The high degree of care required is merely another way of stating the proposition that the care required depends upon circumstances and amounts to ordinary care in view of the situation.

The respondent, to sustain the judgment, contends that where a motor vehicle is proceeding at a lawful rate of speed the driver is not liable if a small child suddenly darts into the path of the motor vehicle and is hit.

 The lawfulness of the speed of a motor vehicle is not determined by a particular rate of speed. The lawfulness of the speed of a motor vehicle within the prima facie limits fixed by Ch. 187, Laws 1941, is determined by the further test of whether the speed is "greater than is reasonable and prudent under the conditions then existing". A speed which would be safe and reasonable in some places and under some circumstances might be highly dangerous and unreasonable in other places. Respondent was not under ordinary circumstances traveling at an unlawful speed. But we are dealing with a situation where the driver knew of the presence of many children of tender age in or near the street attending a Christmas party and in such a situation it was his duty to be on the lookout for unexpected and heedless conduct on their part and to have his car under such control as to avoid injury. The rule that a driver of an automobile is not required to anticipate the appearance of a child, under ordinary circumstances, from behind parked automobiles or other obstructions does not here apply. Defendant was confronted with the presence of many children in or near the street and not of a single individual. Children under the situation might be expected to emerge from be-

tween parked cars. While the evidence is conflicting, the testimony on behalf of the minor plaintiff which must be considered in the light most favorable to him establishes the fact that he was struck and run over by defendant's car and it may be fairly inferred that the serious injuries sustained by him would not have resulted if the boy ran into the side of the car as defendant claims. We cannot say as a matter of law that respondent was not guilty of negligence. The jury may well have concluded that there was, under the circumstances, a lack of proper control of the car or attention on the part of the respondent.

The judgment appealed from is reversed and the cause is remanded with directions to the trial court to enter judgment for the plaintiff upon the verdict.

All the Judges concur.